# CIRCUIT COURT OF BALTIMORE CITY.

Filed March 8, 1916.

BENJAMIN ROSENHEIM
VS.
CLARA N. PACHOLDER, ET AL.

*Myer Rosenbush* for Clara N. Pacholder.

*Ralph Robinson* for Abraham M. Pacholder.

*Eli Frank* for Hebrew Hospital and Asylum Association.

*Sidney L. Nyburg* for Hebrew Benevolent Society of Baltimore City.

*Harman, Knapp, Ulman & Tucker* for Safe Deposit and Trust Company.

DAWKINS, J.—

The bill in this case asks the Court to assume jurisdiction over the trust created under the will, to direct dis-

tribution of the estate and to ascertain and determine the amount due to the several legatees named in the will, as well as to fix the rights of the others interested in the estate of said deceased.

It has been agreed that there shall be no question raised as to erasures and alterations appearing on the face of the will, the same having been shown to have been made by the testator in his lifetime in his own handwriting and the will having proven to have been found among the private papers of the deceased at the time of his death. Apart from the agreement the effect of the erasures under the circumstances stated, seem to be settled in Safe Deposit Co. vs. Thom, 117 Md.

The testator left a widow who was a second wife. The will was executed whilst the deceased was a widower. The deceased has no children by either marriage. He had three brothers. These latter, a niece and sundry organizations are mentioned in the will. Of the brothers, Louis died before the deceased, unmarried. Another brother, Asher, has not been heard from for about 22 years. He was then in a hospital in London, England. Diligent inquiry has failed to elicit any trace of him, since that time, so that all the members of the family are confident that he is dead. When last heard from he was ill. He was unmarried. He has been made a party to the suit and the order of publication has been prayed against him. The other brother, Abraham M. Pacholder, is living. The daughter of Abraham, the niece of the deceased, Edith, has married and is now Mrs. Senker. The parents of the testator, Morris and Dina Pacholder, predeceased him.

Considering the several questions presented it would be best, first, to fix the rights of the widow.

The contention is made on behalf of the widow that her husband died intestate so far as she is concerned, and that she is entitled to one-half of the estate, including the fee simple property, because the manifest intention of the testator was to have his estate converted into cash by the executor before distribution was made. There can be but little doubt but that the testator did have such an intention at the time the will was made, but he

was unmarried then. This widow claims not *by or under* the will but *outside* of it. At the moment of the marriage her property rights became fixed and established, regardless of the existence of the will. She can hardly claim rights under a document that she justly seeks to ignore. She can not enlarge the scope of the will. If the will is to determine her portion of the estate she would receive nothing, because she is not mentioned in it, but the law will not permit her to be so deprived of what is due her.

The conditions existing at the time of the making of the will were greatly different from what they were when the testator died. At the former period the brothers were all living or supposed to be living. The parents were living, the niece was unmarried and the testator himself was a widower.

The property either passes to the widow under the will or it does not so pass.

If the widow obtains her property under the will, then I think the principle enunciated in 102 Md. 408, State vs. Moberly; 110 Md., Lambert vs. Morgan, that when the intention of the testator is to have his estate converted into cash for distribution, as is so plainly expressed in this will, the conversion takes place at the time of the death of the testator. If the widow claimed under the will she undoubtedly would be entitled to one-half of the whole estate, for where there can be no carrying out of the provisions of the will, otherwise than by a sale, then the conversion takes place when the death occurs, even though there is no express provision to sell, but the widow does not claim under the will. It would therefore seem that the widow's portion should be allowed from such estate as existed at the time of the husband's death, and she should receive such part of the estate as she would be entitled to receive had the deceased died intestate, to wit: One-half of the personalty, together with such other allowance as she may be entitled to have and such interest in the fee property as she would be entitled to receive by way of dower under the testamentary laws of the State of Maryland.

As to item 1 of the will, adopting the agreement heretofore mentioned and the principle of the Rieman case, 117 Md. (Safe Deposit and Trust Co.

vs. Thom) the sum to be paid to the Har Sina Hebrew Congregation of Baltimore City should be $200. This same rule fixes the amount to be paid the Hebrew Hospital and Asylum Association of Baltimore City, the Hebrew Benevolent Society of Baltimore City and the Hebrew Orphan Asylum of Baltimore City as $200 to each and the amount to be paid to the Hebrew Free Burial Society of Baltimore City as $100.

Before Edith (Mrs. Senker) becomes entitled under item 4 there are certain prerequisites to be complied with by her. These provisions seem entirely reasonable in their nature, viz., if she marries it must be with the consent of both parents, if alive, and it must not be outside of the Jewish faith. The proof shows she married in the Jewish faith, whilst she eloped she did not do so against the wishes of her parents. The testimony shows that the parents did consent just as soon as they had an opportunity to do so. Unless there were some sort of opposition disclosed before or after the marriage it would seem to me that this is a substantial compliance with the requirements of the will. Adopting the rule heretofore fixed, I think that the amount to be payable to Mrs. Senker should be $5,000.

I have examined with care the authorities cited by counsel for the trustee, but in my judgment they are not inconsistent with the determination reached so far as they may be in point.

As to the fifth item of the will. It is the manifest intention of the testator that the trust shall continue through the lifetime of the brothers, and upon their deaths to the surviving children, if any—if no surviving children, then to the institutions named. It would seem that Abraham M. Pacholder, for the reasons heretofore given, is at present entitled to receive the income arising from said trust. After his death the estate will pass to his children. In the event of no children surviving him, then to the several institutions named at the conclusion of the said item of the will.

The only remaining questions presented in the bill and answers and at the argument are not difficult of solution. It is hardly necessary to cite any authority to justify the propriety of the executor bringing the estate into this Court for the relief asked in the bill. Jurisdiction over the estate should be assumed by this Court, and the distribution after the acount is stated in the Orphans' Court should be carried out herein and the amounts should be ascertained as due to the several parties entitled to share in the estate. As the relief sought in the bill should be granted, it would seem clear that the cost of these proceedings should be paid out of the fund brought into this court by the executor.

I am prepared to sign a decree in accordance with the views above expressed.